IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **TOMMY LEDENKO,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**IDEAL CONCEPTS, INC.,** a Pennsylvania corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Tommy Ledenko ("Plaintiff Ledenko" or "Ledenko") brings this Class Action Complaint and Demand for Jury Trial against Defendant Ideal Concepts, Inc., ("Defendant Ideal Concepts" or "Ideal Concepts") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") and the Florida Telephone Solicitation Act ("FTSA") by placing calls using an artificial voice agent to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC") in violation of the FTSA. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Ledenko, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all

1

other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.     Plaintiff Ledenko is a resident of Largo, Florida.

2.     Defendant Ideal Concepts is a corporation registered in Pennsylvania, with its headquarters located in Allentown, Pennsylvania. Defendant Ideal Concepts conducts business throughout the US including in Florida.

## JURISDICTION AND VENUE

3.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.     This Court has personal jurisdiction and venue is proper since the Defendant does business in this District and the wrongful conduct giving rise to this case was directed from the Defendant into this District where the Plaintiff resides.

## INTRODUCTION

5.     As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in

2

Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.      By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.      According to online robocall tracking service "YouMail," 3.8 billion robocalls were placed in February 2026 alone, at a rate of 136.8 million per day. www.robocallindex.com (last visited March 29, 2026).

10.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

3

12.    "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13.    Defendant Ideal Concepts sells health and other insurance solutions to consumers throughout the US.[3]

14.    Ideal Concepts launched InsureMe to sell life insurance solutions to consumers in 2022:



15.    Ideal Concepts owns/operates the website www.insureme.com, and its employees interchangeably identify as working for Ideal Concepts and InsureMe.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://www.linkedin.com/company/idealconceptsinc/about/

4

16.    Ideal Concepts employees place cold calls to generate business for its insurance packages.

17.    Current and former employees have posted complaints about the cold calls they had to place in online job reviews, including:

1.0 ★☆☆☆☆ ⌄                                                    Jan 14, 2026   •••

**Terrible Company**

⊘  Licensed insurance agent

Former employee, less than 1 year        ⊙ Allentown, PA

✗ Recommend    ✗ CEO approval    ✗ Business Outlook

**Pros**
Met one great person and her husband

**Cons**
Lack of management
No feedback or communication/training
Lack of discipline
Claiming they want openness, but really want sheep.
Selective Favoritism
You're cold calling "prospects" because they're too cheap to pay for legitimate leads like other companies I've worked for.                [4]

2.0 ★★☆☆☆ ⌄                                                    Jun 29, 2024   •••

**Not for everyone**

⊘  Insurance sales agent

Current employee, less than 1 year        ⊙ Allentown, PA

✗ Recommend    ✗ CEO approval    ✗ Business outlook

**Pros**
The people are nice, free coffee.

**Cons**
You have to be ready to pretty much cold call 7.5 hours a day, the leads are old and most people have little interest.                     [5]

---

[4] https://www.glassdoor.com/Reviews/Ideal-Concepts-Reviews-E972320.htm
[5] https://www.glassdoor.com/Reviews/Ideal-Concepts-Insurance-Agent-Reviews-EI_IE972320.0,14_KO15,30.htm

5

### "Problematic Ideas".... see what I did there?



**Insurance Sales Agent**

Former Employee, less than 1 year    ⊙ Lehigh Valley, PA

✗ Recommend    ✗ CEO Approval    ✗ Business Outlook

**Pros**

Remote, and that about it.

**Cons**

I was hired on as an insurance agent. First day on the job they forgot about me for about 2 hours. I had to reach out to my recruiter and ask what was going on. I was then thrown into a Zoom meeting and was told I was going to cold call seniors and convince them to get a quote for Medicare. I was told this was a job as an Auto Insurance Agent and cold calling seniors was "training". I quit as soon as I found another job. Don't waste your time [6]

---

1.0 ★☆☆☆☆ ⌄                                                    Dec 13, 2023  •••

### Toxic as toxic can be.



**Licensed Insurance Agent**

Former Employee, more than 1 year

✗ Recommend    ✗ CEO Approval    ✗ Business Outlook

**Pros**

Work from home for awhile until the CEO decided he wanted everyone in office again (even though it was the EXACT same as at home).

**Cons**

Pay isn't what they say it is. Bonuses are near impossible to hit. No work life balance. Cold calling. Constant pressure to always make sales and you can't have an 'off' day. Heard if you needed to work remote for whatever reason, they would make you use PTO. CEO laid a bunch of people off at the beginning of the year just to announce later he was building this whole tower in center city Allentown. Was told on long overtime days to not take full lunch because we had to make sales. Empathy is missing. They want you to push their horrible products that cost too much to poor clients, which in turn makes it really seem like you are in fact only there to make the sale and not actually care about the human on the other end of the line. Told training was only a couple weeks, but then made to cold call for other agents for months until you meet their insane requirements to 'move on'. System was simple but crashed often. Training didn't teach enough. I could go on but you get the idea, it's a complete crock. Don't do it. They look at you like a number and nothing more. Whole job made me feel scummy and scammy and just dirty.

**Advice to Management**

Focus on listening to your employees and giving a true work life balance. An end time is an end time, people shouldn't be forced to work late making them miss out on things they had already planned. If a business model requires you to over work your employees while barely paying a true livable wage while your business model sucks. [7]

---

[6] https://www.glassdoor.com/Reviews/Ideal-Concepts-Reviews-E972320.htm
[7] Id.

3.0 ★★★☆☆ ⌄                                                    Oct 26, 2023  ••

**Not what they say**

👤  **Medicare Sales Agent**

Current Employee, more than 1 year    📍 Allentown, PA

◯ Recommend    ◯ CEO Approval    ◯ Business Outlook

**Pros**

Inexpensive medical and dental Good amount of time off

**Cons**

Not clear on how/when you can use time off Don't explain training fully, says no cold calling/out bound calls to strangers - but there IS [8]

**Recruiter Review**

Corporate Recruiter (Former Employee) - Allentown, PA - December 16, 2023

While this company has an excellent benefits package. Overall there is a lack of overall direction.

As a recruiter, you'll essentially be cold calling resumes in mass. The recruiting process is more call center than actual recruiting. There is no opportunity for growth, as this company is private and lacks overall growth runway.

Managers are respectful but not supportive. Truly to succeed in this environment, one must typically work outside of business hours to ensure you can meet performance in order to not be fired.

Promotions are attached to outrageous expectations.

Would NOT recommend working here as a sales agent or recruiter - RUN.

✓ **Pros**

Great Benefits.

✗ **Cons**

Leadership, Growth, Workload, Overworked, Long-hours, Cold-Calling [9]

---

[8] Id.

[9] https://www.indeed.com/cmp/Ideal-Concepts-6/reviews

**bait and switch**

Insurance Agent (Former Employee) - Remote - June 20, 2023

Their interview process is the longest and most complicated I've ever encountered in my years of working in the industry. You have to take multiple assessments, (one of which lasts longer than an hour from what I recall) have to attend three interviews (the last of which wouldn't turn on his camera but wanted mine on?) and are told that it's an advanced sales position.

When you are brought on you are acting as their tier-1, aka cold-calling for other agents. You are in this role not for a set period of time like the interviews would have you believe, but you are in this role until you complete the proper number of transfers that they want you to complete, while being as efficient as they want you to be during a 2-week period. The reality is they want Tier 1 employees without having to pay people specifically to do the role, so they use you as cheap labor for leads until they say you can move on.

✓ **Pros**
laptop was nice, people are friendly

✕ **Cons**
the work, the interview process, the bait-and-switch behavior of the role.          10

18.    The Defendant place calls using an artificial voice agent as part of its cold calling.

19.    The Defendant does not obtain appropriate consent before placing artificial voice agent calls to consumer phone numbers, such as Plaintiff Ledenko.

20.    In addition, the Defendant Ideal Concepts places unsolicited calls to Florida phone numbers that are registered on the DNC, as per Plaintiff Ledenko's experience.

21.    Ideal Concepts employees have posted complaints about the quality of the leads they were provided by the Defendant online, including:

---

[10] Id.



1.0 ★☆☆☆☆ ⌄                                      Mar 10, 2026  •••

## Scummy or Scammy?

Licensed health and life insurance agent

Former employee, less than 1 year    ⊙ Allentown, PA

✗ Recommend    ✗ CEO approval    ✗ Business Outlook

**Pros**
Management is helpful, that's it.

**Cons**
Bad Leads
Bad Product
Bad Morals
Bad Pay
Bad Everything                                              [11]

1.0 ★☆☆☆☆ ⌄                                      Aug 28, 2025  •••

## Terrible place to work steer clear

Insurance sales agent

Current employee, less than 1 year    ⊙ West Palm Beach, FL

✗ Recommend    ✗ CEO approval    ✗ Business Outlook

**Pros**
Remote work is about the only pro I can think of.

**Cons**
Horrible sales tactics
Unethical
Bonus not paid
Chargebacks
Bad leads
Lied to in training by recruitment, sales management and licensing dept.

**Advice to Management**
Invest in good leads                                        [12]

---

[11] https://www.glassdoor.com/Reviews/Ideal-Concepts-Reviews-E972320.htm
[12] https://www.glassdoor.com/Reviews/Ideal-Concepts-Reviews-E972320.htm?page=2

9

★☆☆☆☆  July 1, 2025

**Overall Experience: Very Disappointing**

**Independent Insurance Agent**    📍 Pennsylvania

Overall Experience: Very Disappointing

I had a highly negative experience with this organization due to several serious issues that impacted both morale and performance.

Poor Management
Poor Communication
Vague Instructions
Poor Lead Quality                                             [13]

22.    The calls that Ideal Concepts places are solicitations for insurance products.

23.    Consumers have posted complaints about unsolicited prerecorded calls that they received from Ideal Concepts, including:

- *"They said they were from insure me.its about the card that spousely gives you money to use for extra expense but they want your medical number (robocall / recorded message)"*[14]
- *"Robo call from Insure Me. They have called a ton of times in the last week from different numbers."*[15]
- *"Robo call claiming they are from insure me. I am on the no call list."*[16]

24.    Consumers have also posted complaints direct to the Defendant through the Better Business Bureau about unsolicited calls, including:

---

[13] https://www.indeed.com/cmp/Ideal-Concepts-6/reviews
[14] https://callfilter.app/17073836080
[15] https://lookup.robokiller.com/p/601-524-9042
[16] https://lookup.robokiller.com/p/601-524-9078

10

**👤 Initial Complaint**

**Date:** 03/11/2025

**Type:** 🆎 Sales and Advertising

**Status:** ✅ Resolved

I have been receiving relentless spam calls from InsureMe, sometimes multiple times a week and, at times, even every other day. These calls are unwanted, disruptive, and feel like harassment. I have not given consent for this level of repeated contact, and despite my attempts to stop the calls, they continue.I am formally requesting that InsureMe permanently remove my phone number from their call lists and cease all unsolicited contact immediately. If this issue is not resolved, I may be forced to explore legal action for harassment [17]

**👤 Initial Complaint**

**Date:** 02/13/2025

**Type:** 👤 Customer Service

**Status:** 💬 Answered

Received a call 02/12/2025 at 6:38P from ▓▓▓▓▓. A female sounding voice stated they were calling from InsureMe and that they'd connect me to an agent, didn't state who they were attempting to reach. After they connected me to an agent, I made the agent aware that the previous caller had not stated who the organization was attempting to reach and asked several times for the name. The alleged agent again stated the name of their organization. The alleged agent stated they were attempting to reach ▓▓▓▓▓ (my mom why has been deceased since 11/2013). My mom and I did not share a contact number, when she was alive. Not sure how they got my mom's name or any other info regarding my mother or how they got my contact number. [18]

**👤 Initial Complaint**

**Date:** 11/26/2024

**Type:** 🛠 Service or Repair

**Status:** 💬 Answered

Called at 7pm CST said they were with insureme then never talked back when spoken to want DNC list but couldn't acknowledge that they even understood what was instructed [19]

**👤 Initial Complaint**

**Date:** 11/26/2024

**Type:** 🆎 Sales and Advertising

**Status:** ✅ Resolved

This company calls me incessantly despite my number being on the Federal DO NOT CALL list. I've attempted numerous time to get them to stop calling. Clearly this company does not care at all about Federal communication laws. When I asked to speak to their legal department, I was given an email address. They also refused to provide their mailing address to submit a formal complaint to them. [20]

---

[17] https://www.bbb.org/us/pa/allentown/profile/insurance-agency/old-im-co-inc-0241-236066804/complaints
[18] Id.
[19] Id.
[20] Id.

11

**👤 Initial Complaint**

**Date:** 11/21/2024

**Type:** 🅰 Sales and Adve

**Status:** ✅ Resolved

They use spoofed numbers from around the country to robocall and harass me about insurance. My number is on the ▓▓▓▓▓ registry but they still call and will subject themselves to thousands of dollars in fines if they do not stop. [21]

25. In response to these calls, Plaintiff Ledenko brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA and FTSA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF LEDENKO'S ALLEGATIONS

26. Plaintiff Ledenko is the subscriber and sole user of the Florida area code cell phone number ending with 7802.

27. Plaintiff Ledenko's cell phone number was registered on the DNC on October 31, 2019.

28. When Plaintiff Ledenko acquired his cell phone number in 2022, he found that the number was already registered on the DNC.

29. Since acquiring his cell phone number, Plaintiff Ledenko has maintained his telephone number's registration on the National Do Not Call Registry and has never requested its removal.

---

[21] Id.

12

30.    Plaintiff Ledenko's cell phone number is registered on the National Do Not Call Registry and, pursuant to Fla. Stat. § 501.059(3)(d), is required to be included in the Florida 'no sales solicitation calls' list maintained by FDACS.

31.    Plaintiff Ledenko uses his cell phone number for personal use only as one would use a landline telephone number in a home. Such use includes speaking to family and friends.

32.    Plaintiff Ledenko's cell phone number is not associated with a business and is not used for business-related purposes.

33.    Plaintiff Ledenko pays for the use of his cell phone personally. It is not reimbursed by a business.

34.    Plaintiff Ledenko resides in Florida and his cell phone number has a 727 Florida area code.

35.    On March 20, 2026 at 9:50 AM, Plaintiff Ledenko received an unsolicited call to his cell phone from 707-316-4280.

36.    When Plaintiff Ledenko answered the call, an artificial voice agent greeted him and explained that it was calling about changes to health plans and subsidies.

37.    The artificial voice agent then asked if Plaintiff was enrolled in his own health plan.

13

38. Plaintiff Ledenko answered that he was, but the artificial voice agent could not process what was said and after a long pause, it asked, "Hello?"

39. Plaintiff Ledenko repeated the answer "yes" and then said, "I said 'yes'".

40. The artificial voice agent repeated, "Are you still enrolled in your health plan?" disregarding what Plaintiff Ledenko had said.

41. Plaintiff Ledenko confirmed that he was.

42. The artificial voice agent confirmed that it could help Plaintiff Ledenko with his health plan and said that it would transfer him.

43. Plaintiff Ledenko was transferred to a live agent who identified himself as Andrew Stalfort.

44. Stalfort said he worked for InsureMe and indicated that the call was intended for someone named Simetric Thomas and to provide healthcare coverage.

45. After speaking to Stalfort, Plaintiff Ledenko was then transferred to an employee who identified himself as Michael Vargas.

46. Like Stalfort, Vargas began the call by saying he worked for InsureMe and indicating that the call was intended for someone named Simetric.

47. Shortly after this transfer, the call was terminated.

48. Plaintiff Ledenko believes that Simetric Thomas is the previous owner of his cell phone number, as he has received other calls intended for this name.

14

49.    The Defendant had no prior express consent from Plaintiff Ledenko to place calls to his telephone number.

50.    According to LinkedIn, Michael Vargas is employed by Ideal Concepts, Inc:

**Michael Vargas**
Sales Agent at Ideal Concepts, Inc.
Nazareth, Pennsylvania, United States · **Contact info** [22]

51.    Plaintiff Ledenko could tell that the call began with an artificial voice agent because the artificial agent had trouble understanding him, it sounded robotic, the intonation was unnatural, there were unnatural pauses, and the agent failed to acknowledge Plaintiff's response when he confirmed that he has a health plan.

52.    Plaintiff Ledenko has never provided his cell phone number to the Defendant or any of its affiliated entities.

53.    Plaintiff Ledenko never provided consent for the Defendant to call his cell.

54.    The unauthorized solicitation telephone call that Plaintiff Ledenko received from the Defendant has harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

---

[22] https://www.linkedin.com/in/michael-vargas-62636a3b3/

15

55.     Seeking redress for these injuries, Plaintiff Ledenko, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

56.     Plaintiff Ledenko brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendant called on their cellular telephone number (2) using an artificial or prerecorded voice.
>
> **Florida DNC Class**: All persons in Florida who from four years prior to the filing of this action through class certification (1) whose telephone numbers were registered on the National Do Not Call Registry, and (2) who received unwanted telephonic sales calls from the Defendant.

57.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Ledenko anticipates the need to amend the Class definitions following appropriate discovery.

16

58.    **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

59.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)    Whether Defendant's conduct violated the TCPA;

(b)    whether the Defendant made calls using an artificial or prerecorded voice to consumer telephone numbers without consent;

(c)    whether the Defendant placed unsolicited calls to Plaintiff and members of the Florida DNC Class without first obtaining consent to make the calls;

(d)    whether the calls constitute a violation of the TCPA and FTSA; and

(e)    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

60.    **Adequate Representation**: Plaintiff Ledenko will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Ledenko has no interests

17

antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Ledenko and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Ledenko nor his counsel have any interest adverse to the Classes.

61.    **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Ledenko. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Ledenko and the Pre-recorded No Consent Class)**

62.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

63.     The Defendant transmitted unwanted solicitation telephone calls to Plaintiff Ledenko and the other members of the Pre-recorded No Consent Class using an artificial or prerecorded voice.

64.     These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff Ledenko and the other members of the Pre-recorded No Consent Class.

65.     The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Ledenko and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation, as well as injunctive relief.

**SECOND CLAIM FOR RELIEF**
**Florida Telephone Solicitation Act**
**(Violation of the Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Ledenko and the Florida DNC Class)**

66.     Plaintiff repeats and realleges paragraphs 1-61 of this Complaint and incorporates them by reference herein.

67.     Plaintiff Ledenko brings this claim individually and on behalf of the

19

Florida DNC Class Members against the Defendant.

68.     Pursuant to Fla. Stat. § 501.059(3)(d), FDACS is required to incorporate into the Florida "no sales solicitation calls" list all Florida numbers registered on the National Do Not Call Registry.

69.     It is a violation of the FTSA to make or cause to be made any unsolicited telephonic sales call to any number appearing on that Florida list. Fla. Stat. § 501.059(4). Accordingly, calls to Florida numbers registered on the National Do Not Call Registry violate the FTSA.

70.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

71.     In violation of the FTSA, the Defendant made and/or caused to be made unsolicited telephonic sales calls to Plaintiff Ledenko and other members of the Florida DNC Class, despite their telephone numbers being registered on the National Do Not Call Registry.

72.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Ledenko and Class members were harmed and are each

20

entitled to a minimum of $500.00 in damage for each violation. Plaintiff Ledenko and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and FTSA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Ledenko requests a jury trial.

Respectfully Submitted,

**TOMMY LEDENKO**, individually and on behalf of all others similarly situated,

DATED this 3rd day of May, 2026.

21

By: /s/ *Stefan Coleman*
Stefan Coleman (Fla. Bar No. 30188)
COLEMAN PLLC
18117 Biscayne Blvd
Suite 4152
Miami, FL 33160
(877) 333-9427
law@stefancoleman.com

Avi R. Kaufman (Fla. Bar No. 84382)*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Lead Counsel*

*Attorneys for Plaintiff and the putative Classes*